558 So.2d 712 (1990)
Antonio PRADO
v.
SLOMAN NEPTUN SCHIFFAHRTS-A.G., et al.
No. 89-CA-1208.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1990.
Rehearing Denied April 19, 1990.
*713 Charles F. Lozes, D. Kirk Boswell, Terriberry, Carroll & Yancey, New Orleans, for defendant-appellee.
Bruce C. Waltzer, Paul S. Weidenfeld, Waltzer & Bagneris, New Orleans, for plaintiffs-appellants.
Before SCHOTT, C.J., and CIACCIO and PLOTKIN, JJ.
SCHOTT, Chief Judge.
The key issue in the case is whether the law of the United States should be applied to this maritime tort where plaintiff is a citizen of the Republic of the Philippines; he joined the crew of the Epsilongas in the Philippines; the Epsilongas was a ship of Netherlands Antilles flag and registry and was owned by defendant, a corporation organized and existing under the laws of the Netherlands Antilles with its principal place of business in Willemstad, Curacao; plaintiff's employment contract was drafted by Philippine Overseas Employment Administration (POEA), an agency of the Philippine government, and provided that all claims relative to the contract shall be exclusively resolved through the grievance procedure of POEA and the Philippine Court of Justice; that all rights and obligations of the parties to the contract shall be governed by the laws of the Republic of the Philippines; and, that POEA shall have original and exclusive jurisdiction over all disputes or controversies arising out of or by virtue of the employment contract; at the time of the injury on May 2, 1987, the Epsilongas was plying the international waters of the Yucatan Channel, and upon the recommendation of the United States Coast Guard the Epsilongas proceeded to Key West, Florida in order to obtain medical assistance for plaintiff; he departed the Epsilongas at Key West, he was treated in Miami, and he was repatriated to the Philippines on August 17.
Plaintiff filed suit in the Civil District Court for the Parish of Orleans under the Jones Act, 46 U.S.C.A.App. 688, and the general maritime laws of the United States against defendant, Asiento Shipping Co. N.V., his employer and the owner of the ship on which he was injured. Defendant filed exceptions to the venue, exceptions of no right and no cause of action, and a motion for summary judgment. The trial judge overruled the exception to the venue but sustained the exception of no cause of action. He did not specifically rule on the exception of no right of action or the motion for summary judgment.
Before addressing the principal issue we must first consider the procedural posture of the case and determine whether it lends itself to a resolution of the issue. The trial court sustained an exception of no cause of action. This ruling was erroneous because the function of an exception of no cause of action is to question whether the *714 factual allegations of the petition support relief under the law, and it must be decided with reference only to the petition and the documents attached thereto and made part thereof. Because the judgment of the trial court depended upon a statement of uncontested material facts and documents supplied by defendant in response to the petition, the trial court erred in sustaining the exception. LSA C.C.P. art. 931.
However, contemporaneously with the filing of its exceptions, the defendant filed a motion for summary judgment, pursuant to C.C.P. art. 966, to which it was entitled if the pleadings and other documents of record showed that there was no genuine issue as to material fact and that defendant was entitled to judgment as a matter of law. At the time the trial court considered the exception of no cause of action, the motion for summary judgment was properly pending and ripe for a decision. For the reasons to be discussed below, defendant was entitled to a summary judgment dismissing plaintiff's suit even though it was not entitled to a dismissal based upon its exceptions. As in Roloff v. Liberty Mutual Insurance Company, 191 So.2d 901, 903 (La.App. 4th Cir.1966) since we are required by C.C.P. art. 2164 to render any judgment which is just, legal, and proper upon the record before us, we will treat the judgment of the trial court as having granted defendant's motion for summary judgment.
The facts recited in the opening paragraph of this opinion were presented by defendant to the trial court in a "Statement of Uncontested Material Facts." Since this statement was not controverted by plaintiff, these facts were deemed admitted pursuant to Rule 9, Section 1(a) of the Civil District Court Rules. Pursuant to Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) these facts clearly entitle defendant to judgment as a matter of law. The facts of the Lauritzen case are practically identical to those of the instant case with the single exception that in Lauritzen the contract of employment with the Danish seamen Larsen was made in New York. Nonetheless, the Supreme Court held that this factor did not provide a basis for the application of the laws of the United States to the case. In the instant case plaintiff's contract of employment was made in the Philippines.
In Lauritzen the court listed the following factors to be considered in making the choice of law applicable to a maritime tort:
1. The place of the wrongful act (in this case, international waters);
2. The law of the flag (in this case, the Netherland Antillies and Aruba);
3. The allegiance or domicile of the injured seaman (in this case, Philippino);
4. The allegiance of the defendant ship owner (in this case, the Netherlands Antillies and Aruba);
5. The place of contract, including the law the parties intended to apply (in this case, Republic of Philippines, Philippine law)
6. The inaccessibility of the foreign forum (in this case, defendant agrees to submit to the jurisdiction of the Philippine judicial system and plaintiff, who is a resident and domicilary of the Philippines, does not cite any disadvantage under his country's law); and
7. The law of the forum (in this case, defendant has not voluntarily submitted to the law of the forum).
In Lauritzen, after considering these factors, the court declared that it could not "find any justification for interpreting the Jones Act to intervene between foreigners and their own law because of acts on a foreign ship not in our waters." 73 S.Ct. at page 933. The same must be said of the instant case.
In oral argument plaintiff asserted that he was not aware that defendant was arguing choice of law and act of state (because of our conclusions with respect to choice of law, we decline to address the act of state). He maintains that given more time he could have investigated further and taken discovery to develop an issue as to material fact. In the first place, in its motion for summary judgment and memorandum in *715 support filed on March 14 defendant argued these doctrines in detail. The trial court did not decide the case until May 2. The record establishes that plaintiff was made aware of these issues and had an opportunity to address them. Furthermore, when plaintiff argued to us that he was deprived of the opportunity to take depositions before the summary judgment was submitted, the court asked what material facts could be discovered which would create genuine issues precluding summary judgment. He responded that he might discover that the Epsilongas had more frequent contacts with ports of the United States than the isolated calls in Plaquemines Parish which are conceded to have taken place. In Lauritzen, the court noted that the plaintiff Larsen "places great stress upon the assertion that [defendant's] commerce and contacts with the ports of the United States are frequent and regular, as the basis for applying our statutes to incidents aboard his ships." 345 U.S. at 581, 73 S.Ct. at 928. The court gave no weight to this argument and held that such facts made no difference in a consideration of the pertinent factors listed and discussed above.
Accordingly, the judgment appealed from dismissing plaintiff's suit is considered as one granting defendant's motion for summary judgment and is affirmed.
AFFIRMED.